UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | : | Case No.: 1:24-cv-2595 |
| *Petitioner*, | : | |
| v. | : | **MEMORANDUM OF LAW IN SUPPORT OF PETITION TO CONFIRM AND ENFORCE FINAL ARBITRATION AWARD** |
| VOICE TELE SERVICES INC., | : | |
| *Respondent*. | : | |

-------------------------------X

Petitioner, National Union Fire Insurance Company of Pittsburgh, PA ("**NUFIC**"), by and through its counsel, submits this Memorandum of Law in support of its accompanying Petition to Confirm and Enforce Final Arbitration Award, pursuant to Chapter 2 of the Federal Arbitration Act (the "**FAA**"), 9 U.S.C. §§ 201 *et seq.,* and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 330 U.N.T.S. 38 (the "**New York Convention**").

I.  **INTRODUCTION**

On April 7, 2023, Mr. Mark C. Morril, in his capacity as duly appointed and authorized sole arbitrator, issued a final and binding arbitration award ("**Final Award**") in an American Arbitration Association arbitration between Voice Tele Services Inc., as claimant ("**VTS**"), and NUFIC, as respondent, captioned Case No. 01-21-0016-0974 (the "**Arbitration**"). The Final Award, which is attached as Exhibit 1 to the Declaration of Kurt W. Hansson dated April 4, 2024 ("**Hansson Declaration**"), denied VTS's claims and requested relief against NUFIC in its entirety and awarded NUFIC the net sum of US$345,836.50 in attorneys' fees and arbitration

costs. Despite being immediately binding and effective on VTS, VTS has refused NUFIC's demands for full payment pursuant to the Final Award.

There are no grounds under either the New York Convention or the FAA on which this Court may refuse to confirm and enforce the Final Award. *See* 9 U.S.C. § 207; New York Convention, Art. V. *See VRG Linhas Aereas S.A. v. Matlin Patterson Global Opportunities Partners II L.P.,* 717 F.3d 322, 325 (2d Cir. 2013) ("The court is to confirm the award unless it finds one of the seven grounds for refusal offered in Article V of the Convention"). Accordingly, for the reasons set forth in the Petition and for the additional reasons demonstrated below, this Court should enter a judgment confirming and enforcing the Final Award in NUFIC's favor and granting all other and further relief that this Court deems just and proper.

## II.  FACTUAL BACKGROUND

### A.  The Arbitration Proceedings

The Arbitration arose out of an insurance coverage dispute involving an international trade credit insurance policy, written on a "Domestic and Export Credit Insurance Shipments Form," that NUFIC issued to VTS for the period July 1, 2020 to July 1, 2021 (the "**Policy**"). In seeking insurance coverage from NUFIC, VTS represented that it was an intermediate wholesale telecommunications carrier of international Voice Over Internet Protocol ("**VoIP**") voice and data minutes operating in a "complex international telecommunications business setting." *See* Hansson Decl., Exhibit 1 at 11-12 and 51.

In a wholesale VoIP transaction, "a call, particularly an international call, is routed from a beginning point caller across several carriers… until eventually the call 'terminates' at the end point." Id. at 11. According to VTS, VTS operated as one of those intermediate carriers responsible for facilitating the completion of those calls to their final destination, typically in

developing nations. The Policy that VTS sought and ultimately obtained from NUFIC provided coverage for VTS's international wholesale VoIP transactions with an enumerated group of domestic and international customers located in the United States, Hong Kong, Romania, Switzerland, and the United Kingdom. *See* Hansson Decl., Exhibit 2 at 15 (Policy Endorsement No. 1 (enumerating the customer countries covered under the Policy)).

In or around November 2020, VTS filed multiple claims under the Policy in connection with invoices for telecommunications services that VTS alleged its customers never paid (the "**Claimed Transactions**"). Each of these Claimed Transactions allegedly involved VTS's purchase and sale of international wholesale VoIP minutes that ultimately terminated in Zambia.

After a thorough investigation, in May 2021, NUFIC concluded that, for numerous reasons, VTS was not entitled to reimbursement for any of the Claimed Transactions and, further, that the Policy was void and all premiums paid to NUFIC should be forfeited. *Id*. at 31. On August 10, 2021, VTS initiated an arbitration with the American Arbitration Association pursuant to the Policy's arbitration agreement, which was memorialized in Article VI.C of the Policy (as amended by Endorsement 5 of the Policy). *See* Hansson Decl., Exhibit 2 at 12, 19-20. By joint letter to the American Arbitration Association dated September 2, 2021, the Parties subsequently confirmed that the legal seat and of the Arbitration would be New York City and that any hearings would be conducted in New York City. *See* Hansson Decl., Exhibit 3.

In accordance with the Arbitration Agreement, the Parties selected Mr. Mark C. Morril as the duly appointed and authorized sole arbitrator. Following several rounds of pre-hearing briefing and reciprocal document disclosure, a final evidentiary hearing was conducted before Mr. Morril in New York City from October 19, 2022 to October 20, 2022.

### B. The Final Award

The Arbitrator issued the Final Award on April 7, 2023 in favor of NUFIC. *See* Hansson Decl., Exhibit 1. In the Final Award, the Arbitrator rejected all of VTS's claims and ruled that NUFIC's denial of coverage and voidance of the Policy was justified. *Id.* at 53-54. The Final Award also rejected VTS's claims for attorneys' fees and arbitration costs. Instead, the Final Award ordered VTS to pay NUFIC a net total sum of US$345,836.50 in attorneys' fees and arbitration costs. Despite several demands for payment from NUFIC, VTS has refused to comply with its payment obligations pursuant to the Final Award.

Accordingly, although NUFIC has attempted to resolve this dispute amicably without judicial intervention, NUFIC is compelled to bring this Petition to confirm and enforce the Final Award.

### III. ARGUMENT

#### A. The New York Convention Governs the Confirmation and Enforcement of the Final Award

The Final Award was issued in an arbitration governed by the New York Convention, as codified in Chapter 2 of the FAA, and should be summarily confirmed accordingly. Section 207 of the FAA provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207.

An arbitral award solely between U.S. citizens "falls under the Convention" when the parties' legal relationship "involves property abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202. Applying that standard, this Court has determined that the New York Convention governs arbitration agreements and/or awards between U.S. citizens where, *inter alia*: (a) one of the domestic arbitrating parties has global operations, *see, e.g., HBC Sols., Inc. v. Harris Corp.*, No. 13-CV-7327, 2014 WL 3585503, at *3 (S.D.N.Y. July 18, 2014) (holding that although both parties were Delaware corporations, the transfer of business with "global operations" from one entity to another is sufficient for jurisdiction under the New York Convention); (b) the parties' contract contemplated international activity, *see, e.g., Heather Trading Corp. v. Voest–Alpine Trading U.S.A. Corp.*, No. 85–CV–823 (SWK), 1986 WL 4542, at *2 (S.D.N.Y. April 8, 1986) (finding jurisdiction under the New York Convention with respect to a contract to deliver crude oil in Ecuador); (c) the parties' underlying relationship was "center[ed] on" international business, *see, e.g., LGC Holdings Inc. v. Julius Klein Diamonds, LLC*, 238 F. Supp. 3d. 452, 460 (S.D.N.Y. 2017) (finding jurisdiction under the New York Convention where the relationship between the parties "center[ed] on three joint ventures in the international diamond industry"); and (d) the parties conducted business outside the United States, *see, e.g., PKT Assocs., Inc. v. Granum Grp.*, LLC, No. 18-CV-1169 (VEC), 2018 WL 3392879, at *1 (S.D.N.Y. July 12, 2018) ("[P]arties' agreement to sell and ship products outside of the United States is sufficient to meet this standard").

As discussed above in Section II, not only did VTS's wholesale telecommunications VoIP business involve operating in a "complex international telecommunications business setting," with VTS's actual and potential counterparties located in numerous jurisdictions, but

the NUFIC Policy—upon which the Parties' coverage dispute was predicated—specifically envisaged coverage for VTS's international wholesale VoIP transactions. Further, each of the Claimed Transactions at issue in the Arbitration involved VTS's alleged purchase and sale of international wholesale VoIP minutes for calls ultimately destined for Zambia.

For the foregoing reasons, the Final Award "fall[s] under the Convention" within the meaning of 9 U.S.C. §§ 202-203. Accordingly, as discussed in the following section, the Final Award's confirmation should be summarily granted.

**B.     The Final Award Should Be Confirmed and Judgment Entered Thereon**

Chapter 2 of the FAA provides that U.S. district courts must confirm and enforce arbitral awards arising under the New York Convention, except where limited enumerated grounds exist. "[C]onfirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *BSH Hausgerate, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 672 (S.D.N.Y. 2017) (cleaned up). Accordingly, "the district court's role in reviewing a foreign arbitral award is strictly limited: 'The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" *Yusuf Ahmed Alghanim Sons v. Toys "R" US*, 126 F.3d 15, 19 (2d Cir. 1997) (quoting 9 U.S.C. § 207).

The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC,* 497 F.3d 133, 138 (2d Cir. 2007) (cleaned up); *see also Leeward Constr. Co. v. Am. Univ. of Antigua,* 826 F.3d 634, 638 (2d Cir. 2016) ("[A]s a general matter, a court is required to enforce the arbitration award as long as there is a barely colorable justification for the outcome

reached.") (cleaned up). In evaluating a petition to confirm an arbitral award under 9 U.S.C. § 207, the district court's review of the award's conclusions is highly circumscribed: "Absent extraordinary circumstances, a confirming court is not to reconsider the arbitrator's findings." *Europcar ltalia, S.P.A. v. Maiellano Tours,* 156 F.3d 310, 315 (2d Cir. 1998).

Against the strong statutory and judicial presumption in favor of confirmation of arbitral awards, a respondent opposing confirmation of an arbitral award under the New York Convention bears both the burden of proof and the burden of persuasion to make a convincing showing that one of the limited grounds for refusing confirmation applies. *See Parsons & Whittemore Overseas Co.* v. *Societe Generate de L 'lndustrie Du Papier (RAKTA),* 508 F.2d 969, 973 (2d Cir. 1974) (the burden of proof under the New York Convention is on "the party defending against enforcement" and limited to the seven defenses set forth in Article V); *TMR Energy Ltd. v. State Prop. Fund,* 411 F.3d 296, 304 (D.C. Cir. 2005) (the New York Convention "assigns the burden of persuasion to the party opposing enforcement"). Moreover, the already-limited defenses to enforcement under the New York Convention "are construed narrowly, to encourage the recognition and enforcement of commercial arbitration agreements in international contracts." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 364 F.3d 274, 288 (5th Cir. 2004) (cleaned up); *Commodities & Minerals Enter.mv. CVG Ferrominera Orinoco, CA,* 2020 U.S. Dist. LEXIS 223954 *11 (S.D.N.Y. 2020) ("Review… is 'very limited ... in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'") (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us.,* Inc., 126 F.3d 15, 23 (2d Cir. 1997)).

Although VTS has refused to comply with its obligations to make full payment of US$345,836.50 pursuant to the Final Award, VTS has not indicated any intent to judicially challenge the Award.  And for good reason:  None of the seven enumerated grounds for refusal/deferral of recognition set forth in Article V of the New York Convention remotely apply to the Final Award.  These enumerated, exhaustive grounds include: (a) incapacity of the party or invalidity of the agreement; (b) lack of notice to a party against whom an award was made; (c) that the award deals with a difference outside the scope of the submission to arbitration; (d) the composition of the arbitral authority or arbitral procedure was not in accordance with the agreement of the parties or the law of the country where the arbitration took place; (e) the award has not yet become binding on the parties or has been set aside or suspended; (f) the subject matter of the arbitration is not capable of settlement by arbitration under the law of the country; or (g) recognition or enforcement of the award would be contrary to public policy of the country where enforcement is sought.  *See* New York Convention, Art. V. §§ 1-2.

For example, there can be no question that the Parties' coverage dispute under the insurance policy is "capable of settlement by arbitration" under U.S. law.  To the contrary, U.S. law strongly encourages arbitration of commercial disputes and the recognition of resulting awards.  *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 631 (1985) (noting strong "federal policy" in favor of arbitral dispute resolution).  VTS also cannot avail itself of the public policy exception to confirmation:  The "public policy defense should be construed narrowly" and should be applied "only where enforcement would violate our 'most basic notions of mortality and justice'".  *Waterside Ocean Navigation Co. v. Int'l Navigation, Ltd.,* 737 F.2d 150, 152 (2d Cir. 1984) (quoting *Fotochrome Inc. v. Copal Co.,* 517

F.2d 512, 516 (2d Cir. 1975)). Likewise, VTS would be unable conjure any procedural infirmities with the manner in which the Arbitration was conducted—an Arbitration in which VTS participated voluntarily and completely—that would permit VTS to carry its "heavy" burden to oppose this Court's summary confirmation. *Pagaduan v. Carnival Corp.,* 830 F. App'x 61, 61-62 (2d Cir. 2020) (cleaned up); *VRG Linhas Aereas S.A. v. Matlin Patterson Global Opportunities Partners II L.P.,* 717 F.3d 322, 325 (2d Cir. 2013) ("The court is to confirm the award unless it finds one of the seven grounds for refusal offered in Article V of the Convention.").

For the foregoing reasons, NUFIC is entitled to immediate confirmation and enforcement of the Final Award as a judgment of this Court pursuant to the New York Convention and the FAA, and respectfully requests that the Court enter judgment accordingly.

### C. The Court Should Award NUFIC Post-Award Pre-Judgment Interest

This Court has the inherent authority to award post-award, pre-judgment interest in connection with its confirmation of the Final Award. *See Waterside Ocean Navigation,* 737 F.2d at 153-154 ("[W]e have repeatedly recognized the power of district courts to award pre-judgment interest" and extending this principal to "actions brought under the [New York] Convention"). "[T]he concept of post-award interest is not alien to the Convention, and arbitrators in many jurisdictions—including New York—have granted such interest. Also, district judges in the Southern District of New York have granted post-award, pre-judgment interest in both domestic and foreign arbitration cases." *Id.* at 154 (cleaned up).

Further, there is a *judicial presumption* in favor of award post-award, pre-judgment interest, with such interest calculated from the date the award was issued until the date of the

9

confirming court's judgment. *Sarhank Grp. v. Oracle Corp.*, No. 01 CIV. 1285 (DAB), 2004 WL 324881, at *2, 4 (S.D.N.Y. Feb. 19, 2004) (holding that the "Second Circuit recognize[s] a presumption in favor of pre-judgment interest on a judgment confirming an arbitral award under the Convention" and that "the interest should be calculated from the date of the award.") (cleaned up); *see also In re Arbitration Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 226-27 (S.D.N.Y. 2005) (Chin, J.); *Bergheim v. Sirona Dental Sys., Inc.,* No. 16 CV 1692-LTS, 2017 WL 354182, at *4 (S.D.N.Y. Jan. 24, 2017), *aff'd*, 711 F. App'x 43 (2d Cir. 2017).

Because this Court is sitting in federal question jurisdiction, it has the power to exercise its discretion and grant NUFIC post-award, prejudgment interest in accordance with federal law. *Sarhank Grp. v. Oracle Corp.,* No. 01 CIV. 1285 (DAB), 2004 WL 324881, at *5 (S.D.N.Y. Feb. 19, 2004) ("The federal rate reflects the economic conditions at the time this Court's judgment was rendered. It preserves the value of the award as originally decided, affording neither party a benefit, and is consistent with the Convention's goals of fostering stability and certainty in international commercial transactions. Moreover, it provides "make whole" relief without overcompensating Petitioner."); *See also Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 314 F. Supp. 2d 201, 205 (S.D.N.Y. 2003) (awarding prejudgment rate of interest pursuant to 28 U.S.C. § 1961).

Accordingly, NUFIC requests that the Court apply post-award, pre-judgment interest to its judgment confirming the Final Award at the rate and in the manner prescribed by 28 U.S.C. § 1961.

### D. The Court Should Also Award NUFIC Post-Judgment Interest

Federal courts confirming arbitral awards also regularly apply and add post-judgment interest at the statutorily-prescribed rate under 28 USC §1961. Under the "merger" doctrine, when a valid and final judgment for the payment of money is rendered, the claimant's original claim is

extinguished and a new cause of action on the judgment is substituted in its place. *See Bayer CropScience AG v. Dow Agrosciences LLC*, 680 F. App'x 985, 1000 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 505 (2017) (applying the merger doctrine in the context of confirming an award under the New York Convention); *see also Westinghouse Credit Corp. v D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004) ("[T]he general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives."); *Global Gold Mining LLC v. Caldera Res., Inc.*, 2019 WL 367824, at *7 (S.D.N.Y. Jan. 30, 2019) (same).

Accordingly, NUFIC requests that the Court apply and award post-judgment interest on the total amount of US$345,836.50 due to NUFIC pursuant to the Final Award, at the rate and in the manner prescribed by 28 USCS § 1961, from the date judgment is entered on the Final Award until such time as VTS pays this amount in its entirety.

### E. This Court Should Order Post-Award, Pre-Judgment Discovery of VTS's Assets

As a result of VTS's ongoing refusal to pay the amounts owed to NUFIC, NUFIC also seeks pre-judgment asset discovery from VTS. Federal Rule of Civil Procedure ("**FRCP**") Rule 64(a) provides that "at the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." FRCP 64(b) enumerates the specific types of contemplated remedies, including a catch-all for "other corresponding or equivalent remedies."

Against that backdrop, FRCP 64(a) directs federal courts to apply the substantive law of the state in implementing the relief requested under that Rule. *See Armada (Singapore) PTE Ltd. v. N. China Shipping Co., (BVI)*, 633 F. Supp. 2d 168, 170 (S.D.N.Y. 2009) ("Rule 64 ... authorizes a federal court to borrow relevant state law on provisional remedies. And although the

federal civil rules govern the conduct of the action in federal court, state law determines when and how a provisional remedy is obtained") (cleaned up); *see also Insurity, Inc. v. Mut. Grp., Ltd.*, 260 F. Supp. 2d 486, 487-488 (D. Conn. 2003) (relying on FRCP Rule 64 as the basis for adopting Connecticut state law in issuing an order requiring the pre-judgment disclosure of assets before an arbitration award was rendered).

Because New York law governs the Parties' underlying insurance policy, CPLR § 5229 governs this issue. Section 5229 provides that "before a judgment is entered, upon motion of the party in whose favor a verdict or decision has been rendered, the trial judge may order examination of the adverse party . . . ." "Other than having received a favorable verdict or decision, there are no prerequisites to obtaining the relief provided in CPLR 5229." *Sequa Capital Corp. v. Nave*, 921 F. Supp. 1072, 1076 (S.D.N.Y. 1996); accord *Gallegos v. Elite Model Mgmt. Corp.*, 768 N.Y.S.2d 134, 135 (Sup. Ct. 2003) (explaining that "[t]he only statutory requirement is that the application for 5229 relief be made by the prevailing party"). For example, there is no requirement that the moving party make a preliminary showing that defendant is disposing of assets. *Leser v. U.S. Bank Nat. Ass'n*, No. CV 2009-2362 KAM MDG, 2013 WL 867153, at *1 (E.D.N.Y. Feb. 21, 2013), report and recommendation adopted, No. 09-CV-2362 KAM MDG, 2013 WL 867151 (E.D.N.Y. Mar. 7, 2013).

As this Court has previously held, a final arbitration award that is subject to recognition and enforcement, but upon which a judgment has not yet been entered, satisfies CPLR § 5229's "verdict or decision" requirement. *Loew v. Kolb*, No. 03CIV.5064 (RCC), 2003 WL 22077454, at *2 (S.D.N.Y. Sept. 8, 2003) ("[CPLR] 5229 is properly invoked where there is some time between a decision and the judgment. Here, Petitioner has obtained a favorable decision from a [] arbitration panel and there will be some time between the rendering of [that] arbitration award

and the entry of judgment on that award."). Thus, although occurring in the time period between the issuance of the Final Award and this Court's entry of judgment on that Award, in these circumstances, CPLR § 5229 effectively functions as a post-verdict remedy because the "Court's power to review an arbitral award is severely limited" and it is "well settled in the Second Circuit that confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Id.* (cleaned up).

It is also well settled that pre-judgment discovery necessary to identify and locate a judgment debtor's assets qualifies as an "other corresponding or equivalent remedy" in accordance with FRCP 64 and CPLR § 5229. *Leser v. U.S. Bank Nat'l Ass'n,* No. CV 2009-2362 KAM MDG, 2013 WL 867153, at *2 (E.D.N.Y. Feb. 21, 2013), report and recommendation adopted, No. 09-CV-2362 KAM MDG, 2013 WL 867151 (E.D.N.Y. Mar. 7, 2013) ("Although Rule 64 specifically refers to the restraint of property and not discovery, the rule also refers to "other corresponding or equivalent remedies." Discovery to locate the judgment debtor's assets qualifies as a "corresponding" remedy"); *see also Demirovic v. Ortega*, 296 F. Supp. 3d 477, 484 (E.D.N.Y. 2017) (authorizing discovery pertaining to a judgment-debtor's finances under CPLR § 5229).

In the present case, NUFIC has already received a favorable "verdict" through the Final Award in the Arbitration and there are no legitimate grounds on which VTS can oppose the Final Award's confirmation. Thus, to facilitate and expedite NUFIC's recovery of the monetary judgment to which it is entitled, during the pendency of this action, NUFIC requests this Court issue an order granting NUFIC's pre-judgment discovery of VTS's assets and interests pursuant to Fed. R. Civ. P. Rule 64 and New York CPLR § 5229.

In the alternative, if this Court does not agree that CPLR § 5229 applies as a post-award, pre-judgment remedy, NUFIC requests that this Court retain jurisdiction to grant discovery of VTS's assets under CPLR § 5229 after confirming the Final Award and before entering judgment thereon.

### F. This Court Should Order Post-Award, Pre-Judgment Attachment of VTS's Assets

Pursuant to Fed. R. Civ. P. Rule 64 and New York CPLR § 5229, NUFIC requests that this Court also order the attachment of any assets identified in pre-judgment discovery necessary to satisfy the Final Award.

Rule 64 of the FRCP provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." Fed. R. Civ. P. 64(a). CPLR § 5229 "is designed to secure satisfaction of the judgment ultimately to be entered in the action .... [and] has substantially the same effect as an attachment and seizure of property." *Sequa Capital Corp.*, 921 F. Supp. at 1076 (cleaned up). Thus, CPLR § 5229 is a remedy within the meaning of Rule 64. *Id.*; accord *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 2016 WL 7217641, at *6 (E.D.N.Y. Dec. 13, 2016); *Demirovic v. Ortega*, 296 F. Supp. 3d 477, 481-484 (E.D.N.Y. 2017). The purpose of CPLR § 5229 is "to prevent an adverse party from disposing of assets in order to avoid judgment." *Gallegos*, 768 N.Y.S.2d at 135.

Despite NUFIC's repeated requests for payment and compliance, VTS has failed to comply with the Final Award. The Court should therefore attach VTS's assets (as identified in

pre-judgment discovery) necessary to satisfy VTS's obligations pursuant to Fed. R. Civ. P. Rule 64 and New York CPLR § 5229.

In the alternative, if this Court does not agree that CPLR § 5229 applies as a post-award, pre-judgment remedy, NUFIC requests this Court to retain jurisdiction to order attachment of VTS's assets under CPLR § 5229 after confirmation of the Final Award and before entering judgment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, NUFIC respectfully requests that this Court:

(i) Issue an order confirming and enforcing the terms of the Final Award and entering judgment thereon;

(ii) Issue an order requiring VTS to pay post-award, pre-judgment interest on the total amount of US$345,836.50 owed to NUFIC pursuant to the Final Award, as from the date the Final Award was transmitted to the Parties (*i.e.*, April 7, 2023) until such time as judgment is entered on the Final Award, at the rate and in the manner prescribed by 28 U.S.C. § 1961;

(iii) Issue an order requiring VTS to pay post-judgment interest on the total amount of US$345,836.50 owed to NUFIC pursuant to the Final Award, as from the date judgment is entered on the Final Award until such time as VTS pays this amount in its entirety, at the rate and in the manner prescribed by 28 U.S.C. § 1961; and

(iv) Issue an order allowing pre-judgment discovery pursuant to Fed. R. Civ. P. Rule 64 and New York CPLR § 5229 prior to confirming the Final Award, or in the alternative, retain jurisdiction after confirming the Final Award to grant pre-judgment discovery;

(v) Issue an order allowing attachment of any assets identified in pre-judgment discovery pursuant to Fed. R. Civ. P. Rule 64 and New York CPLR § 5229 prior to confirming the Final Award, or in the alternative, retain jurisdiction after confirming the Final Award to grant pre-judgment attachment of any assets identified in the pre-judgment discovery; and

(vi) Award NUFIC such other and further relief that this Court deems just and proper.

Dated: April 5, 2024

Respectfully submitted,

PAUL HASTINGS LLP

/s/ *Kurt W. Hansson*

Kurt W. Hansson
200 Park Avenue
New York, NY 10166
Tel: (212) 318-6000
Fax: (212) 319-4090
kurthansson@paulhastings.com

Joseph R. Profaizer (*Pro Hac Vice* Forthcoming)
Adam J. Weiss (*Pro Hac Vice* Forthcoming)
2050 M Street NW
Washington, DC 20036
Tel: (202) 551-1700
Fax: (202) 551-1705
joeprofaizer@paulhastings.com
adamweiss@paulhastings.com

*Attorneys for Petitioner*
*National Union Fire Insurance Company of Pittsburgh, PA*