# EXHIBIT 2



**777 S. Figueroa Street ♦ Los Angeles, CA 90017 ♦ (213) 689-2761**

July 6, 2020

Ms. Natalee Palmer
Meridian Finance Group
11900 W Olympic Blvd., Suite 810
Los Angeles, CA 90064

Dear Natalee:

We are pleased to enclose the original of the following policy:

        **Voice Tele Services, Inc.    16483374-20**

For your convenience, we have outlined below the reporting requirements for the policy period

1.  Please remember to give immediate notice to the Company of any Buyer that may be in financial difficulty or is Insolvent, pursuant to Article VI., Item M.1. of the policy.

2.  In addition, the Insured shall report to the Company within 30 days of the end of each quarter their aging as of the last day of the preceding quarter, pursuant to Article VI. Item M. 2.

Your cooperation with the maintenance of this policy and the timely submission of the necessary reports is greatly appreciated.

Sincerely,

**Nick Gilmartin**
**AIG**
Underwriter – Trade Credit

NG/fsm



**DOMESTIC AND EXPORT CREDIT INSURANCE
SHIPMENTS FORM**

√ **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**
□ **THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA**

Executive Offices: 175 Water Street, New York, New York 10038
(212) 770-7000

Policy Number: 16483374-20

**POLICY DECLARATIONS**

I.  Insured and Mailing Address: **Voice Tele Services, Inc.**
1608 Walnut Street, 12th Floor
Philadelphia, PA 19103

II.  Broker and Mailing Address:  Meridian Finance Group
11900 W Olympic Blvd., Suite 810
Los Angeles, CA 90064

III.  Policy Period:  From July 1, 2020       to July 1, 2021
(12:01 A.M. Standard Time at the
insured's address)

IV.  Premium:  Per Endorsement No. 2

V.  Policy Limit of Liability:  $3,500,000

VI.  Discretionary Credit Limit:  $0 - Named Only

VII.  Country Limits of Liability:  Per Endorsement No. 1

VIII.  Deductible:  $100,000

IX.  Non Qualifying Loss Amount: $0

X.  Maximum Terms of Payment: 30 days

XI.  Goods Insured:  Telecommunication Whole Carrier

XII.  Insured Percentage:  90% unless otherwise noted

XIII.  Credit Limit Fee:  $0

XIV.  Commission:  15%

XV.  TRIA Premium, Taxes and Surcharges N/A

"TRIA Premium" means the premium for certified acts of Terrorism Coverage under Terrorism Risk Insurance Act of 2002, as amended. The TRIA Premium amount indicated above is included in Premium.

This policy is the entire agreement between the **Insured** and the Company and no terms, conditions or warranties of this policy shall be waived or changed, unless agreed to in writing by an authorized representative of the Company.

Brad Hicks

Authorized Representative
July 6, 2020

110102 (11/11)

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).   The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.   You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

91222 (9/16)

## DOMESTIC AND EXPORT CREDIT INSURANCE
## SHIPMENTS FORM

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words **you** and **your** refer to the **Insured** shown in the Declarations, and any other person or organization qualifying as the **Insured** under this Policy. The words **we, us** and **our** refer to the company providing this insurance.

Other words and phrases that appear in boldface have special meanings. Refer to **SECTION II.**, **DEFINITIONS**.

In consideration of the premium paid and in reliance on the representations made by **you** in the application, including all written statements and materials furnished to **us** in conjunction with such application, attached to and made a part of this Policy, **you** and **we** agree as follows:

---

## I.    INSURING AGREEMENT

The Company shall indemnify the **insured** for **loss** directly caused by the failure of the **buyer** to pay the **insured** all or part of the invoice value of the **eligible shipments** within the **waiting period**.  The amount payable by the Company will be calculated in accordance with SECTION V., Proof and Payment of Claims and Recoveries, and will be subject to the **policy limit of liability** and other applicable terms and conditions of the policy.

---

## II.    *DEFINITIONS*

A.   **Buyer** means:

1.   A duly organized and legally existing corporation, proprietorship, partnership or government entity in the **buyer's country**.

2.   All corporations and other entities controlling, controlled by, or under common control with the **buyer** in A.1., above. "Control" means ownership directly or indirectly of more than fifty percent (50%) of the voting share capital, or effective management control of the **buyer**.

B.   **Buyer's Country** means the country from which the **buyer** is obligated to pay the **insured** under the terms of the **contract of sale**.

C.   **Buyer Limit** means the limit specified in writing by the Company for that **buyer** or, where no such limit has been specified by the Company, then an amount not exceeding the **discretionary credit limit,** as specified in ITEM VI. of the Declarations, provided such amount has been approved in writing by the **insured** for that **buyer** at the time of or prior to shipment.

If a **buyer** includes other entities as described in A.2., above, then the **insured** shall establish an aggregate **buyer limit** for all such related entities, which shall be the applicable **buyer limit** for the purposes of the policy.

D.   **Contract Currency** means the currency in which the **buyer** is obligated to pay and to deliver to the **insured** under the terms of the **contract of sale**.

E.   **Contract of Sale** means a negotiable debt instrument (such as a promissory note, draft or bill of exchange) or open account documents including:

1. An invoice issued by the **insured** evidencing the transaction;

2. Written purchase order(s) from the **buyer** or other document(s) signed by the **buyer** through which the **buyer** acknowledges its obligation to the **insured**; and

3. Shipping documents evidencing the transfer of control and custody of the **goods insured** from the **insured** to the **buyer**.

The Company shall deem a negotiable debt instrument or other written acknowledgement of the invoice value from the **buyer** to constitute a duly executed **contract of sale**.

F.   **Country Limit of Liability** means the amount(s) specified in ITEM VII. of the Declarations, which is the Company's maximum liability for all **loss** in each particular country.

G.   **Deductible** means the amount specified in ITEM VIII. of the Declarations, which is the annual aggregate sum of **loss** incurred in connection with **eligible shipments** that the **insured** shall bear for its own account.

H.   **Discretionary Credit Limit** means the amount specified in ITEM VI. of the Declarations, which is the maximum **buyer limit** the **insured** may establish for a **buyer** without obtaining approval from the Company.

I.   **Dispute** means any written declaration, or the act thereof, made by a **buyer** through which the **buyer** asserts that its obligation to the **insured** is invalid, offset or otherwise diminished.

J.   **Due Date** means the date payment is required to be made by the **buyer** to the **insured** under the terms of the **contract of sale**.

K.   **Eligible Shipment(s)** means any and all shipment(s) of **goods insured** to the **buyer** pursuant to the **contract of sale**, provided that the **goods insured** are:

1. Shipped during the **policy period**.  Shipment begins when the **goods insured** have left the custody and control of the **insured** or its agent in transit to the **buyer**;

2. Delivered as required under the **contract of sale**;

3. Sold for **contract currency** and in accordance with the **maximum terms of payment**; and

4. Shipped in conformity with the applicable export laws and regulations of the **insured's** country and the import laws and regulations of the **buyer's country**.

L.   **Goods Insured** are limited to the goods specified in ITEM XI. of the Declarations.

M.   **Insolvent/Insolvency** means a voluntary or involuntary petition for relief that has been filed by, or against, the **buyer** under the applicable chapter of Title 11 of the United States Code or similar statutes relating to the relief of debtors in Canada, the United Kingdom, or in euro zone countries of the European Union.

N.   **Insured** means the sole proprietorship, partnership, or corporation stated in ITEM I. of the Declarations.

O.   **Insured Percentage** means the percentage specified in ITEM XII. of the Declarations.

P.   **Loss** means the invoice value of **eligible shipments**, plus any **preference** payment, unpaid by the **buyer** upon its **insolvency**, or upon the expiration of the **waiting period**, less:

    1.   Any discount, allowance, offset or other credit to which the **buyer** would be entitled;

    2.   Any amounts received from any source as or towards payment of the **eligible shipments**;

    3.   Interest; and

    4.   Any applicable sales, value added or comparable tax.

Q.   **Maximum Terms of Payment**, as specified in ITEM X. of the Declarations, means the longest initial period of credit the **insured** may extend to the **buyer**.

R.   **Non Qualifying Loss Amount** means the amount specified in ITEM IX. of the Declarations.  If a **loss** does not exceed the **non qualifying loss amount**, then such amount shall be borne by the **insured** for its own account and shall not be applied to the **deductible**.

S.   **Preference** means any amount that the **insured**, after exhausting all valid defenses, is obligated to return to a **buyer** that is **insolvent** provided that such amount was received from the **buyer** as payment for an **eligible shipment** and the **insured** notified the Company in writing upon becoming aware of such obligation. The **insured** is responsible for the costs of raising valid defenses of any **preference** amounts unless otherwise agreed in writing by the Company.

T.   **Policy Limit of Liability**, as specified in ITEM V. of the Declarations, means the Company's maximum liability for the total of all **loss** insured under this policy.

U.   **Policy Period** means the period specified in ITEM III. of the Declarations.

V.   **Waiting Period** means the number of days set forth in the **country limit of liability** endorsement that must elapse from each **due date** before any **loss** is payable under this policy.  The **waiting period** shall not apply to a **buyer** that is **insolvent**.

## III.   EXCLUSIONS

The policy does not apply to any **loss** arising out of, based upon, attributable to or involving, directly or indirectly any of the following:

A.   Any **loss(es)** caused by or resulting from the following are not covered under this policy:

1. Wrongful or dishonest acts or omissions of the **insured** or its agents.

2. Any material breach of or inaccuracy regarding any warranty or representations made herein, or failure to perform or to fulfill any warranty, covenant or agreement made herein by the **insured**.

3. Nuclear reaction or nuclear radiation or radioactive contamination.

4. War between the People's Republic of China, France, the United Kingdom, the states of the former Soviet Union, and/or the United States of America.

5. **Insolvency** or financial default of any party except the **buyer**, or, if applicable, the guarantor.

6. The failure of the **insured** or its agents to comply with all the material laws and regulations in connection with the **goods insured**.

7. Sales made on terms of cash in advance, cash on delivery, and confirmed or unconfirmed irrevocable letter of credit.

B.   Any **loss(es)** relating to any of the following **buyers** and/or receivables shall not constitute **loss** and are not covered under this policy unless otherwise agreed in writing by the Company:

1. Any **buyer** that as of the first day of the **policy period** is **insolvent** or more than sixty (60) days past due in any payment obligations to the **insured** unless the total aggregate amount of such past due payment obligations does not exceed the **non qualifying loss amount.** Payment obligations that are **disputed** will not be considered past due for the purposes of this paragraph.

2. Any receivables that are purchased or otherwise acquired by the **insured** from any other person or entity or sold or otherwise transferred by the **insured** to any other person or entity.

3. Any corporation, proprietorship, partnership or entity that controls, is controlled by or is in common control with the **insured**.

---

## IV.   WARRANTIES AND COVENANTS

---

The **insured** warrants and agrees:

A.  To cease all shipments to any **buyer** that becomes **insolvent** and when and for so long as any **buyer** is more than sixty (60) days past due in any payment obligation to the **insured** which, in the aggregate, exceeds the **non qualifying loss amount**. Payment obligations that are **disputed** will not be considered past due for the purposes of this paragraph.  Notwithstanding anything to the contrary herein, the **insured** may continue to make shipments to a buyer that is **insolvent** but no amounts owed with respect to such shipments shall be covered hereunder.

B.  To establish the invoice values of **eligible shipments** as valid and legally enforceable obligations of the **buyer** to the **insured**.

C.  To use all measures to prevent and to minimize **loss**.

D.  To retain for its own account without recourse to any party the amount of the **deductible**, and the amount of any indebtedness owing to the **insured** by any **buyer** that exceeds the applicable **buyer limit**.

E.  Not to extend initial terms of payment to a **buyer** for a period longer than the **maximum terms of payment**, and not to reschedule, extend or change any **due dates** without the written consent of the Company. In the event that the **buyer** is unable to make payment on the original **due date**, the **insured** may extend the original **due date** one (1) time during the **policy period** for the **buyer**, provided the extension is in writing and for a period not to exceed the **maximum extension period**.

F.  That if any payment obligation is **disputed** in whole or in part, the **disputed** amount shall not be part of the **loss** until such **disputed** amount has been finally determined to be a valid and legally sustainable obligation of the **buyer**.  The **insured** is responsible for the resolution of any such **disputes** and any related costs and expenses.

G.  That the credit control procedures attached by endorsement to this policy shall apply to all **eligible shipments** and that it will not vary such credit procedures in any material way without the advance written agreement of the Company. Any additional **insured** added by endorsement to this policy is subject to the same credit control procedures.

H.  That the statements contained in the application and any attachments thereto, which are hereby part of the policy, are true and that no material information has been withheld. Furthermore, that the **insured** has no knowledge at policy inception of any circumstances that may reasonably be expected to result in a **loss** hereunder, except for that which is specifically disclosed about particular **buyers** in the application.  The **insured** warrants that all information given by the **insured** to the Company after the inception of the **policy period** will be true to the best of the **insured's** knowledge.

---

| V. | PROOF OF PAYMENT OF CLAIMS AND RECOVERIES |
|---|---|

A.  Indemnification by the Company shall be calculated as follows, subject always to the **policy limit of liability**, **country limit of liability** and any applicable **waiting period**:

1. Calculate the amount of the **loss**.

2. Subtract the remaining **deductible** from the lesser of either the amount of the **loss** or the applicable **buyer limit**.

3. Multiply the **insured percentage** by the amount determined above.

B.  If the **eligible shipments** that comprise the **loss** were made in two consecutive **policy periods**, and such **eligible shipments** were made within a ninety (90) day period between the first and the last of the **eligible shipments** that comprise the **loss**, then the **deductible** applicable to the **policy period** in which the majority of the **eligible shipments** by value were made will be applied to the **loss**.

C.  The payment for a **loss** shall be made in either U.S. Dollars or in **contract currency** at the Company's sole option, after the submission by the **insured** of a satisfactory proof of **loss** on the form prescribed by the Company and attached hereto.

For the purpose of any calculation required in the settlement of a **loss**, the rate of exchange shall be the rate as offered on the **due dates** by a New York commercial bank selected by the Company.

Each payment made by the Company hereunder shall reduce the **policy limit of liability** and all other applicable limits by the amount of such payment.

D.  The responsibility for proving a **loss** under this policy and evidencing that all conditions and warranties have been complied with shall at all times rest with the **insured**.

E.  For the purpose of calculation of a **loss**, all funds or salvage received from the **buyer** or from any other source whatsoever as or towards payment of the **buyer's** obligations to the **insured** after the **buyer** is in default of any payment obligation to the **insured**, or is **insolvent**, whichever happens first, shall be applied in chronological order of **due dates** until the Company indemnifies the **insured** for the **loss**.  In the event of a settlement with the **buyer** involving a discount of a **contract of sale** or the sale of a **contract of sale** to a third party, all funds paid in the settlement or proceeds from the sale shall reduce the **buyer limit**, irrespective of the existence of coverage for the settled or sold **contract of sale**.

After payment of a **loss**, any such funds or salvage shall be immediately paid to the Company and shared between the Company and the **insured** as follows:

1.  The Company shall receive the **insured percentage** of all sums recovered, and the **insured** shall receive the remaining percentage of such sums, until the amount of the Company's payment of a **loss** and the Company's cost of recovery have been fully reimbursed.

2.  All further sums recovered shall inure to the benefit of the **insured**.

The application of funds described in this SECTION V., E., shall apply regardless of any designation of funds by the **buyer** or any other party unless specifically agreed in writing by the Company.

This SECTION V., E., does not apply to any funds received in payment for goods shipped to a **buyer** after it is **insolvent**.

F.  Sums recovered in respect of any **loss** retained by the **insured** under the **deductible** shall reinstate the **deductible** by the same amount.

G.  Unless a buyer is **insolvent**, an acceleration of **due dates** shall not give rise to a corresponding acceleration of the Company's obligation to make a **loss** payment hereunder. The Company shall be liable for payment of a **loss** based only on the original **due dates** or **due dates** rescheduled with the written consent of the Company so long as the **buyer** is not **insolvent**.  The Company shall make an accelerated payment of a **loss**, net of any unearned interest, only with respect to an **insolvent buyer** for whom a receiver, trustee, liquidator, custodian or similar representative has publicly acknowledged the total value of the amounts due.

H.  In the event of any payment of a **loss** under this policy, the Company shall be subrogated to all of the **insured's** rights of recovery against any person or organization, and the **insured** shall execute and deliver all instruments and papers and do whatever else is necessary to secure such rights, including rights with respect to amounts that have been applied to the **deductible** or are in excess of the applicable **buyer limit**, **country limit of liability** or **policy limit of liability**.  The Company shall have the right to direct the manner in which such assets shall be liquidated.  The **insured** shall do nothing to prejudice such rights.

It shall be a condition to the obligation of the Company to make any payment of a **loss** under this policy that the receivables to which it shall be subrogated shall not be subject to any lien, security interest or other third party claim superior to that of the Company.

## VI. GENERAL CONDITIONS

A. ACCOUNTING PRINCIPLES:

All financial statements and accounts as well as the calculation of any **loss** hereunder shall be in accordance with the principles of accounting generally accepted in the **insured's** country, consistently applied.

B. ACTION AGAINST COMPANY:

No action or arbitration proceedings arising out of this policy may be brought against the Company unless the **insured** has complied fully with all terms of this policy and such action is commenced within twelve (12) months following the last day of the **policy period** or within ninety (90) days after the Company's first disposition of a specific claim which is the cause of the action or proceeding, whichever event occurs later.

C. ARBITRATION:

Should any dispute arise between the **insured** and the Company under this policy which cannot be settled amicably, the matter in dispute shall be referred to three persons in New York, one to be appointed by each of the parties hereto, and the third by the two so chosen who shall act as chairman of the proceedings.  Should either the **insured** or the Company fail to appoint an arbitrator or should the two arbitrators so chosen fail to agree on a third arbitrator, then the parties to the arbitration shall apply to the appropriate federal or state court in New York City for the appointment of such arbitrator.  The decision of the arbitrators, or that of any two of them, shall be final and conclusive of all disputes and controversies between the **insured** and the Company relating to the matters in issue.  No award of the arbitrators or judgment of any court with respect to any award, dispute or controversy shall be entered in an amount exceeding the applicable limits set forth in this policy.

D. ASSIGNMENT:

This policy is not assignable.  Any **loss** under this policy may be paid, after adjustment with the **insured**, to a named **loss** payee if such action is agreed by the Company in writing.

E. CANCELLATION:

1.  The **insured** is not permitted to cancel this policy.  The Company is not permitted to cancel this policy, or any limit hereunder, except for nonpayment of premium or pursuant to SECTION VI., F., or VI., H. If the premium has been financed by an affiliate of the Company, any non-payment of an installment payment on that loan shall constitute nonpayment of premium for purposes of this paragraph.

2.  In the event of cancellation by the Company, the Company shall notify the **insured** in the manner provided by SECTION VI., L., hereof, by mailing written notice stating when, not less than ten (10) days thereafter, the cancellation shall be effective.  Upon the effective date of cancellation, the policy shall be voided and no **loss** shall be eligible for payment. The mailing of such notice shall be sufficient proof of notice. The Company shall have no obligation under this policy until the premium has been paid.

F.   CHANGE IN THE COMPOSITION OF THE INSURED:

The **insured** shall notify the Company immediately in writing if, during the **policy period**, it consolidates or merges with, or sells all or substantially all of its assets to any other person or entity or if another person or entity should acquire ownership directly or indirectly of more than fifty percent (50%) of its voting share capital.  Upon receipt of such notice, the Company may cancel this policy effective with the date of such change in the composition or control of the **insured**.  If the policy is canceled, a pro-rata return of premium shall be made by the Company.

G.   CHOICE OF LAW:

The construction, validity and performance of this policy shall be governed by the laws of the State of New York. Terms of this policy which are in conflict with the statutes of the jurisdiction wherein this policy is issued are hereby amended to conform to such statutes.

H.   CONCEALMENT, MISREPRESENTATION, NON-DISCLOSURE, OR FRAUD:

This policy shall be cancelled and coverage denied in the case of intentional concealment, misrepresentation or non-disclosure, or fraud by any **insured** of a material fact concerning this insurance or the procurement thereof. Also, this policy shall become void and all claims made and premium paid hereunder shall be forfeited, and all payments made by the Company shall be returned with interest thereon by the **insured** upon demand.

I.   INSPECTIONS:

The Company may at any time, in connection with a **loss** or proof of a **loss**, examine or require to be produced copies of any corporate records or books, internal documents and correspondence, letters, or other documentation or records in whatever form and wherever situated in the possession or control of the **insured** relating to or connected with this policy or to any transaction between the **insured** and a **buyer**.  The **insured** shall, at the request of the Company, take any and all reasonable steps to obtain for the Company any and all of the aforesaid information in the possession of any other person relating to or connected with this policy or any **loss** hereunder.

J.   LIMITS OF LIABILITY:

Each **buyer limit** and **country limit of liability** under this policy and any preceding or future policies issued by the Company for the **insured** is non-cumulative. When more than one limit is issued for a **buyer** under a policy, the limit in effect for the **buyer** on the relevant shipment date(s) will be the applicable limit for **loss** adjustment purposes. Within each **policy period**, the highest **buyer limit** in effect for the **buyer** is the maximum limit of liability for that **buyer**.  No more than one maximum limit of liability shall be in effect for any one **buyer** or for any one **buyer's country** regardless of the number of years this policy or any prior, replacement or renewal policy is in force.

K.   OTHER INSURANCE:

The insurance provided under this policy shall be excess over any other valid bond, insurance or other indemnity. The **insured** shall inform the Company of any bond, insurance or other indemnity in place at the inception of the policy or as they may arise during the **policy period**.

L.  NOTICES:

All notices provided for in this policy shall be in writing (including by electronic transmission) and given to the **insured** at the address stated in Item 1 of the Declarations or to the Company c/o Global Trade and Political Risk Division at 175 Water Street, 14th Floor, New York, NY 10038 with a copy to: N/A_____.


M.  REPORTING:

1.  The **insured** shall give immediate written notice to the Company as soon as it is aware that any **buyer** with an outstanding balance in excess of the **non qualifying loss amount** may be in financial difficulty or is **insolvent**.

2.  The **insured** shall report to the Company quarterly, within thirty (30) days after each quarter of the **policy period**, an aging of accounts receivable for any **buyer** that is more than sixty (60) days past due in any payment obligation to the **insured** which, in the aggregate, exceeds the **non qualifying loss amount**. Payment obligations that are **disputed** will not be considered past due for the purposes of this paragraph.

N.  CLAIMS REPORTING

The **insured** must submit a written proof of a **loss** acceptable to the Company:

1.  Within a reasonable period after the date of **loss;** or,

2.  Upon demand by the Company.

It is understood that the written proof of a **loss** may be amended from time to time by the **insured** without prejudice to its claim.


O.  PAYMENT OF PREMIUM:

1.  The minimum and deposit premium shall be payable to the Company within thirty (30) days of the effective date of this policy (subject to paragraph 2 below). Any additional or adjustment premiums shall be payable to the Company within fifteen (15) days of the date of billing. Any minimum and deposit premium is fully earned at the inception of this policy.

2.  Any premium which is not payable in full at the inception of this policy shall be fully due and payable immediately in the event a proof of a **loss** is submitted.

By signing below, **our** President and the Secretary on **our** behalf agree to all the terms of this policy.

_____          _____
              Secretary                                              President
            Tanya Kent                                          David H. McElroy
This policy shall not be valid unless signed at the time of issuance by our authorized representative on the Declarations of the policy.

ENDORSEMENT NO. 1

This endorsement, effective 12:01 A.M. **July 1, 2020**, forms a part of Policy No. **16483374-20** issued to **Voice Tele Services, Inc.** by, **National Union Fire Insurance Company of Pittsburgh, PA.**

<u>COUNTRY LIMITS OF LIABILITY AND WAITING PERIODS</u>

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**DOMESTIC AND EXPORT CREDIT INSURANCE**

As respects this endorsement   only, Declarations, ITEM VII., **Country Limits of Liability**, shall be amended to include the following:

| Country | Country Limit of Liability | Waiting Period | Insured Percentage |
|---------|---------------------------|----------------|--------------------|
| USA[1] | $3,500,000 | 0 days – Insolvency 90 days – Protracted Default | 90% |
| Hong Kong | $50,000 | 90 days | 90% |
| Romania | $100,000 | 90 days | 90% |
| Switzerland | $250,000 | 90 days | 90% |
| United Kingdom | $450,000 | 90 days | 90% |

[1]USA includes **buyers** located in Alaska, Hawaii, and within the 48 contiguous United States of America only.

Only those countries named above are covered by this policy.

All other terms, conditions, and exclusions of this policy shall remain unchanged.

_____
AUTHORIZED REPRESENTATIVE
July 6, 2020

110109 (11/11)                                   ENDORSEMENT NO. 2

This endorsement, effective 12:01 A.M. **July 1, 2020**, forms a part of Policy No. **16483374-20** issued to **Voice Tele Services, Inc.** by, **National Union Fire Insurance Company of Pittsburgh, PA.**

**PREMIUM ENDORSEMENT - RATE ON BUYER LIMITS**
**(Without Sales Reporting)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**DOMESTIC AND EXPORT CREDIT INSURANCE POLICY**

On the Declarations, ITEM IV., Premium, is amended to include the following:

1. The minimum and deposit premium for the **policy period** shall be **$75,000** due at inception, $25,000 due August 1st, 2020, $25,000 due September 1st, 2020

2. The portion of minimum and deposit premium attributable to coverage for Acts of Terrorism as defined in Sec. 102, Definitions, of the Terrorism Risk Insurance Act of 2002, as amended, shall be **N/A.**

3. The Company shall increase the minimum and deposit premium for each additional **buyer limit** it establishes for any named **buyers** added or increased above the **Discretionary Credit Limit** during the **policy period.** The amount above the approved limits established at policy inception in the amount of **$4,500,000** will be charged at the Premium Adjustment Rate of **1.2%.**

4. At the end of each quarter, the Company will calculate the increase in **buyer limits** as the change in endorsed **buyer limits** from the end of the previous quarter.

5. A **buyer limit** established during the first half of the **policy period** shall be subject to the full adjustment premium rate. A **buyer limit** that is established anytime during the second half of the **policy period** shall be subject to one half of the adjustment premium rate. Increases to the minimum and deposit premium shall due and payable within 15 days of the invoice from the Company.

6. Reductions by the **insured** or the Company are not factored into the quarterly premium calculations.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of this policy except as hereinabove set forth.

*Brad Hester*

_____
AUTHORIZED REPRESENTATIVE
July 6, 2020

**ENDORSEMENT NO. 3**

This endorsement, effective 12:01 A.M. **July 1, 2020**, forms a part of Policy No. **16483374-20** issued to **Voice Tele Services, Inc.** by, **National Union Fire Insurance Company of Pittsburgh, PA.**

<u>MAXIMUM EXTENSION PERIOD ENDORSEMENT</u>

*This endorsement modifies insurance provided under the following*:

DOMESTIC AND EXPORT CREDIT INSURANCE SHIPMENTS FORM

**SECTION IV, WARRANTIES AND COVENANTS**, **E.** is deleted in its entirety and replaced with the following:

E.    Not to extend initial terms of payment to a **buyer** for a period longer than the **maximum terms of payment**, and not to reschedule, extend or change any **due dates** without the written consent of the Company.

Notwithstanding this warranty and covenant, in the event that the **buyer** is unable to make payment on an original **due date**, the **insured** may extend the original **due date**, corresponding to one or more **eligible shipments**, one time per **buyer** per **policy period**, without the written consent of the Company, provided:

(1)    the extension is made in writing to the **buyer** before the original **due date**; and

(2)    the extension is for a period which does not exceed the **maximum extension period** specified below; and

(3)    no other extension of any **due date** has been provided by the **insured** to that **buyer** during the current or any prior **policy period.**

Maximum Extension Period:    <u>30 days</u> _____ _____

All other terms, exclusions, and conditions of this policy remain unchanged.

_____
AUTHORIZED REPRESENTATIVE
July 6, 2020

115747 (08/13)

**ENDORSEMENT NO. 4**

This endorsement, effective 12:01 A.M. **July 1, 2020**, forms a part of Policy No. **16483374-20** issued to **Voice Tele Services, Inc.** by, **National Union Fire Insurance Company of Pittsburgh, PA.**

<u>**COLLECTION AGENCY ENDORSEMENT**</u>
<u>**(STA International Debt Collection Service)**</u>

*This endorsement modifies insurance provided under the following*:

DOMESTIC AND EXPORT CREDIT INSURANCE SHIPMENTS FORM

**SECTION II, DEFINITIONS**, is amended with the addition of the following definitions:

**COLLECTION AGENCY** means:
STA International Debt Collection Service
1400 Old Country Road, Suite 411
Westbury, NY  11590
Phone Number: (516) 997-2400
Toll Free: (866) 970-9882
Fax Number: (516) 997-2632
Email: aig@stacollect.com
Website:  (http://www.stacollect.com/)

**COLLECTION AGENCY FEE** means the fee applied to the collected debt as set forth below:

If placed within 180 days of debt's due date:

| | | |
|---|---|---|
| ❖ | North America | 9.5% |
| ❖ | United Kingdom and Ireland | 9.5% |
| ❖ | Western Europe | 9.5% |
| ❖ | Japan | 9.5% |
| ❖ | Australasia | 9.5% |
| ❖ | Any other OECD Countries | 9.5% |
| ❖ | Rest of the World | 15.0% |

If placed between 180 days and 18 months of debt's due date:

| | | |
|---|---|---|
| ❖ | OECD countries | 15.0% |
| ❖ | Rest of the World | 25.0% |

Please contact the **Collection Agency** directly for rates if debt's due date is older than 18 months.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of this policy except as hereinabove set forth.

_Brad Hunter_

———————————————————————
AUTHORIZED REPRESENTATIVE
July 6, 2020

**ENDORSEMENT NO. 5**

This endorsement, effective 12:01 A.M. **July 1, 2020,** forms a part of Policy No. **16483374-20** issued to **Voice Tele Services, Inc.** by, **National Union Fire Insurance Company of Pittsburgh, PA.**

**PENNSYLVANIA AMENDATORY ENDORSEMENT**
**(Arbitration)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

This endorsement modifies insurance provided under the following:

DOMESTIC AND EXPORT CREDIT INSURANCE SHIPMENTS FORM

**ARTICLE VI, GENERAL CONDITIONS**, **C. ARBITRATION** is deleted in its entirety and replaced with the following:

    C.       ARBITRATION:

    Should any dispute arise between the **insured** and the Company under this policy, either may make written demand upon the other to submit the dispute for arbitration.  The arbitration proceedings shall take place in the state shown in Item 1 of the Policy Declarations.  The **insured** and the Company must notify the other of the competent appraiser each has selected.  The two appraisers will promptly choose a competent and impartial umpire.  Should either the **insured** or the Company fail to appoint an appraiser or should the two appraisers so chosen fail to agree upon an umpire, then the parties to the arbitration shall apply to the appropriate federal or state court in the state shown in Item 1 of the Policy Declarations for the appointment of such appraiser.  Each appraiser will separately state in writing the amount of the loss.  If the appraisers submit a written report of agreement on the amount of the loss, the agreed amount will be binding upon the **insured** and the Company.  If the appraisers fail to agree, the appraisers will promptly submit their differences to the umpire.  A decision agreed to by one of the appraisers and the umpire will be binding upon the **insured** and the Company.  Each party shall bear the expenses of its designated appraiser and shall jointly and equally share with the other the expense of the umpire and of the arbitration.  Except as specifically provided, nothing in this article is intended to or shall in any manner limit or restrict the rights of the **insured** or the Company or confer any rights to the **insured** or to the Company.  No award of the arbitrators or judgment of any court with respect to any award, dispute or controversy shall be entered in an amount exceeding the applicable limits set forth in this policy.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of this policy except as hereinabove set forth.

_____
AUTHORIZED REPRESENTATIVE
July 6, 2020

(12/13)

## ENDORSEMENT NO. 6

This endorsement, effective 12:01 A.M. **July 1, 2020**, forms a part of Policy No. **16483374-20** issued to **Voice Tele Services, Inc.** by, **National Union Fire Insurance Company of Pittsburgh, PA**.

## LOSS PAYEE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**DOMESTIC AND EXPORT CREDIT INSURANCE POLICY**

As respects this endorsement, SECTION VI., **ASSIGNMENT**, subsection D., it is understood and agreed that any amounts payable under this policy shall be paid to the **insured** and/or to the following parties as their interests may appear:

Name and Address of Bank or Financial Institution:
**Voice Funding, LLC**
3348 Peachtree Road, Suite 700
Atlanta, GA 30326
Owen Hardy, 404.290.3459
owen@voicefunding.net

It is further understood and agreed that any claims filed in connection with a **loss** under the policy will be adjusted with the **insured** and that the loss payee named above will have no rights to pursue a claim directly against the **company** or assume any other rights under this policy.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of this policy except as hereinabove set forth.

_____
AUTHORIZED REPRESENTATIVE
July 6, 2020

110115 (11/11)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO. 7**

This endorsement, effective 12:01 A.M. **July 1, 2020,** forms a part of Policy No. **16483374-20** issued to **Voice Tele Services, Inc.** by, **National Union Fire Insurance Company of Pittsburgh, PA.**

**ECONOMIC SANCTIONS ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

*This endorsement modifies insurance provided under the following:*

**DOMESTIC AND EXPORT CREDIT INSURANCE POLICY**

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of this policy except as hereinabove set forth.

_____
AUTHORIZED REPRESENTATIVE
July 6, 2020

89644 6-13

**ENDORSEMENT NO. 8**

This endorsement, effective 12:01 A.M. **July 1, 2020**, forms a part of Policy No. **16483374-20** issued to **Voice Tele Services, Inc.** by, **National Union Fire Insurance Company of Pittsburgh, PA.**

<u>**ELECTRONIC LISTING OF BUYER LIMITS ENDORSEMENT**</u>
**(With Country Limits of Liability)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

DOMESTIC AND EXPORT CREDIT INSURANCE POLICY

I.      The **POLICY DECLARATIONS** are hereby amended to include the following:

**Uniform Resource Locator**: https://www-222.aig.com/globallimits/

II.   **SECTION II., DEFINITIONS**, C., **Buyer Limit**, is deleted in its entirety and replaced with the following:

      C.   **Buyer Limit** means the limit specified by the Company for that **buyer**. If no such limit has been specified by the Company, then an amount not exceeding the **discretionary credit limit,** as specified in ITEM VI., of the Declarations, provided such amount has been approved in writing by the **insured** for that **buyer** at the time of or prior to shipment. **Buyer limits** specified by the Company shall be listed in the **Uniform Resource Locator** of the Company and remain available for review by the **insured**.

III.   **SECTION II., DEFINITIONS**, F., **Country Limit of Liability**, is deleted in its entirety and replaced with the following:

      F.   **Country Limit of Liability** means the Company's maximum liability for all **loss** in each particular country specified by the Company.

IV.   Solely with respect to coverage afforded by this endorsement, **SECTION VI., GENERAL CONDITIONS**, is amended include the following:

      At policy inception, the Company shall provide the **insured** and the **broker** individual passwords to access the **Uniform Resource Locator. Buyer limits** and **country limits of liability** specified by the Company shall be listed in the **Uniform Resource Locator** and remain available for review by the **insured** or the **broker.** The **buyer limits** and **country limits of liability** listed in the **Uniform Resource Locator** for the **insured** shall be deemed to be attached to this policy and shall be the sole record of **buyer limits** and **country limits of liability** specified by the Company.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of this policy except as hereinabove set forth.

_____
AUTHORIZED REPRESENTATIVE
July 6, 2020

117101 (06/14)